UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALBERT SMITH, | ) | Case No. CV 08-8252-JC |
|             Plaintiff, | ) ) | MEMORANDUM OPINION |
|     v. | ) ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) | |
|             Defendant. | ) | |

**I.   SUMMARY**

    On December 18, 2008, plaintiff Albert Smith ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

    This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; December 24, 2008 Case Management Order ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED.  The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On or about August 15, 2006, plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits. (Administrative Record ("AR") 65-69, 312-18).  Plaintiff asserted that he became disabled on June 25, 2001, due to a "[r]ight leg and ankle injury, lower back and left leg pain, [his] left fingers [being] in [a] permanent flexed position, vision problems, [and] stress and mental and emotional difficulties due to [his] recent release from prison." (AR 65, 78, 312).  The Social Security Administration denied plaintiff's application initially and on reconsideration. (AR 41-42, 46-56, 310-11).  Plaintiff requested a hearing, which an ALJ conducted on May 20, 2008. (AR 26-40).  The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert. (AR 26-40).

On June 13, 2008, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 13-21). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: "frozen right ankle status post surgery for fracture, flexor contracture at the left 4th DIP with a frozen PIP joint secondary to prior surgery,[2] and degenerative disc disease of the lumbar spine" (AR 15); (2) plaintiff's impairments, considered singly or in combination,

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

[2] Plaintiff suffered a gunshot wound to his left hand and underwent surgery to freeze his "PIP" joint. (AR 179). A psychiatric examiner described the resulting condition as a "malformation of two fingers." (AR 168).

did not meet or medically equal one of the listed impairments (AR 15); (3) plaintiff retained the residual functional capacity to perform a limited range of medium work[3] (AR 16-19, 21);[4] (4) plaintiff could not perform his past relevant work (AR 20); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform (AR 21); and (6) plaintiff's allegations regarding his limitations were not entirely credible (AR 19-20).[5]

The Appeals Council denied plaintiff's application for review. (AR 4-6).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable

---

[3]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [the Administration] determine[s] that he or she can also do sedentary and light work." See 20 C.F.R. §§ 404.1567(c), 416.967(c). SSR 83-10 provides in pertinent part:

> The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.

See SSR 83-10.

[4]Specifically, the ALJ determined that plaintiff can (a) lift and carry 50 pounds occasionally and 25 pounds frequently; (b) stand/walk 6 hours in an 8-hour workday; (c) sit 6 hours in an 8-hour workday; (d) occasionally crouch, kneel, stoop and climb; but (e) could not use his left hand for fine manipulation (AR 16-17, 19) (AR 16-17 (adopting consultative medical examiner's residual functional capacity determination at AR 174-80)).

[5]The ALJ also noted that because plaintiff was in prison until June 2006, plaintiff could not receive benefits for the period while plaintiff was incarcerated, even if he were found disabled. (AR 16) (citing Social Security Act, §§ 202(x)(1)(A) and 1611(e)(1)(A) (42 U.S.C. §§ 402(x)(1)(A) and 1382(e)(1)(A)).

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform his past relevant work?[6] If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

---

[6]Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

4

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

**IV.    DISCUSSION**

Plaintiff contends that the ALJ erred in finding that plaintiff could perform a limited range of medium work, which plaintiff asserts (without citation) involves lifting and "stooping and frequent crouching – bending both the back and the legs–in order to move objects from one level to another or to move the objects

near foot level," given plaintiff's fused right ankle. (Plaintiff's Motion at 4). Plaintiff cites to an abstract (that plaintiff has not provided to the court) written by a physical therapist,[7] as support for his assertion that his fused ankle "would result in limitations of floor to waist lifting, carrying, crouching, kneeling, walking, stair climbing, crawling and standing activities," not accounted for by the ALJ. (Plaintiff's Motion at 5).

As noted above, the ALJ found plaintiff capable of performing medium work limited to occasional crouching, kneeling, stooping and climbing, and no use of the left hand for fine manipulation. (AR 19). Substantial evidence supports the ALJ's finding.

### A.   The Relevant Medical Record

Plaintiff was treated for swelling and pain in his right ankle and left leg pain at the Tarzana Primary Treatment Center on December 26, 2006 and January 29, 2007. (AR 206-09).[8] Thereafter, plaintiff received treatment at the High Desert Health System/South Valley Health Center. (AR 266, 271-309). Plaintiff complained of back, leg, and ankle pain, and was given pain medication. (AR 272-93). Plaintiff's treating physician noted "DJD" (degenerative joint disease) of the lumbar spine and right ankle. (AR 275).[9] Plaintiff's treating physicians did not provide any opinions as to plaintiff's residual functional capacity.

---

[7] This purported authority is not persuasive. Assuming the article contains relevant information, the court notes that a physical therapist is not an acceptable source of medical evidence to establish an impairment. 20 C.F.R. §§ 404.1513(a), 404.1513(d).

[8] Prior to that time, plaintiff was incarcerated. (AR 212-36). Prison records show that plaintiff complained of back and ankle pain, and was given pain medication. (AR 216, 231). On May 31, 2005, plaintiff was placed on a "light duty" restriction for one year. (AR 218; see also AR 114 (February 19, 2003 "chrono" noting lower bunk limitation), 235 (noting same)). An October 19, 2005 x-ray showed mild degenerative disc disease in plaintiff's lumbar spine. (AR 223).

[9] A January 18, 2008 MRI showed "multilevel" degenerative disc disease of the lumbar spine. (AR 268-69).

|   |   |
|---|---|
| 1 | Plaintiff underwent a complete internal medicine evaluation on October 9, |
| 2 | 2006, by Dr. Barry Gordon Gwartz.  (AR 174-80).  Plaintiff complained of back |
| 3 | pain, right ankle pain, and left fourth finger contracture.  (AR 174).  Dr. Gwartz |
| 4 | examined plaintiff but had no medical records available for review.  (AR 175). |
| 5 | Plaintiff had mild tenderness to deep palpation in his lower back but his range of |
| 6 | motion was within normal limits despite his complaints of pain.  (AR 177).  Dr. |
| 7 | Gwartz noted, as did the ALJ, that plaintiff's right ankle is "frozen in neutral with |
| 8 | 0 [degrees] dorsiflexion, plantar flexion, eversion and inversion."  (AR 178; see |
| 9 | also AR 18 (ALJ's summary of the medical record)).  Plaintiff had minimal pain |
| 10 | with weightbearing in the right ankle.  (AR 178).  Plaintiff's gait was within |
| 11 | normal limits, he could perform "tandem gait" with slight difficulty, but he could |
| 12 | not stand on the right heel and toe given his frozen ankle.  (AR 179).  Dr. Gwartz |
| 13 | noted that plaintiff needed no "ambulating device" to walk.  (AR 176). |
| 14 | Notwithstanding these findings, Dr. Gwartz opined that plaintiff could perform |
| 15 | medium work with the limitations the ALJ adopted.  (AR 179). |
| 16 | State agency physician, Dr. R.Y. Hood, examined the record and agreed |
| 17 | with Dr. Gwartz's assessment that plaintiff could perform medium work despite |
| 18 | his frozen ankle.  (AR 183-85).  Another state agency physician, Dr. G.W. Bugg, |
| 19 | submitted a Physical Residual Functional Capacity Assessment form dated |
| 20 | November 7, 2006, opining that plaintiff could perform medium work and could |
| 21 | occasionally climb and balance and could frequently stoop, kneel, crouch, and |
| 22 | crawl, with no other noted limitations.  (AR 186-90; see also AR 202-03 (another |
| 23 | state agency physician evaluation noting similar findings on reconsideration)). |
| 24 | Plaintiff testified that he could not lift as he once had done for work because |
| 25 | his back really bothered him on the left side, he had a fused right ankle with |
| 26 | arthritis, and he had arthritis in his left hand.  (AR 31-33).  Plaintiff had no |
| 27 | medical insurance at the time and testified that his doctors at the County had been |
| 28 | giving him pain pills, which he said he took upwards of 10 per day, making him |

"really tired" without helping his pain. (AR 31, 34). Plaintiff said that he was scheduled for a back surgery evaluation in July 2008. (AR 33-34). When asked if he could do work that did not involved lifting, plaintiff said he could not because he had a problem sitting and standing for periods of time. (AR 31-32). Plaintiff was using a cane at the hearing and reported using the cane for about eight months. (AR 33).[10]

### B.  Substantial Evidence Supports the ALJ's Residual Functional Capacity Determination

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[11]  See id.

The opinions of consultative examiners, like Dr. Gwartz, are substantial evidence and may be relied upon by an ALJ in determining a claimant's residual functional capacity, when those opinions are supported by independent clinical findings. Orn v. Astrue, 495 F.3d at 625, 633 (9th Cir. 2007). Here, the ALJ was

---

[10] As noted above, the ALJ disregarded plaintiff's testimony concerning his subjective limitations to the extent it was inconsistent with the residual functional capacity determination. (AR 19-20). Plaintiff does not challenge the ALJ's credibility determination.

[11] Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

entitled to rely on Dr. Gwartz's evaluation based on Dr. Gwartz's examination of plaintiff. Contrary to plaintiff's assertions, the ALJ need not have adopted any greater limitations than he did. Substantial evidence supports the ALJ's residual functional capacity determination and it is not for this Court to substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882.

### C. The Vocational Expert's Testimony Supports the ALJ's Disability Determination

Plaintiff claims that the ALJ was not entitled to rely on the vocational expert's testimony in finding that plaintiff could perform other work at step five, because the hypothetical question posed to the vocational expert assertedly did not contain all of the limitations plaintiff asserts the ALJ should have found. (Plaintiff's Motion at 8-10). While a hypothetical question posed by an ALJ to a vocational expert must set out all the limitations and restrictions of the particular claimant, Light v. Social Security Administration, 119 F.3d 789, 793 (9th Cir.), as amended (1997) (citing Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995)), an ALJ's hypothetical question need not include limitations not supported by substantial evidence in the record. Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (citation omitted). Here, the ALJ posed a hypothetical question to the vocational expert containing all of the limitations the ALJ properly found to exist, and asked the expert whether there were medium unskilled jobs such a person could perform. (AR 36-38)[12] The vocational expert responded in the affirmative, noting that such jobs included a packer (as to which there were 4,000 to 4,500 positions locally), a polisher (as to which there were 2,000 to 2,200 positions locally), and a laundry worker (as to which there were 2,500 to 2,600

---

[12] The ALJ inquired whether there would be medium, unskilled work for a hypothetical person with petitioner's characteristics (like age, limited education, like work background, left-handed), with a base of "medium" who could only occasionally crouch, kneel, climb and stoop, could only use the dominant left hand for gross activities, not fine manipulations, and had no problems with the right, non-dominant hand. (AR 36-38).

9

positions locally).  As the ALJ's hypothetical question included all of the limitations the ALJ properly found to exist, the testimony of the vocational expert constitutes substantial evidence to support the ALJ's step five determination.  The ALJ did not err, let alone materially err in relying upon such testimony.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: October 30, 2009

                                                      /s/
                                    Honorable Jacqueline Chooljian
                                    UNITED STATES MAGISTRATE JUDGE